1

2

3

4

5

6

7

8

9                  IN THE UNITED STATES DISTRICT COURT

10                    FOR THE DISTRICT OF OREGON

11   TAMMIE L. MURRAY,                )
                                      )
12                  Plaintiff,        )
                                      )
13        v.                          )    No. CV-09-1292-HU
                                      )
14   DEPARTMENT OF CONSUMER and       )
     BUSINESS SERVICES, JOHN MARK     )
15   MILLS, ALJ-WCB, JUDITH K.        )    FINDINGS & RECOMMENDATION
     ANDERSON, DOJ-AAG, STEPHEN A.    )
16   ROBERTS, SSCO-OR-OSHA,           )
                                      )
17                  Defendants.       )
     _____)

18

19   Tammie L. Murray
     82270 Red Bluff Road
20   Seaside, Oregon 97138-5037

21        Plaintiff Pro Se

22   John R. Kroger
     ATTORNEY GENERAL
23   Katharine von Ter Stegge
     ASSISTANT ATTORNEY GENERAL
24   Andrew Hallman
     ASSISTANT ATTORNEY GENERAL
25   Department of Justice
     1162 Court Street NE
26   Salem, Oregon 97301-4096

27        Attorneys for Defendants

28   / / /


1 - FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Pro se plaintiff Tammie Murray brings this action against defendants the Department of Consumer and Business Services ("the Department"), Administrative Law Judge (ALJ) John Mark Mills, Assistant Attorney General Judith Anderson, and Oregon Occupational Safety and Health (OR-OSHA) Senior Safety Compliance Officer Stephen Roberts.

Presently, defendants move to dismiss plaintiff's First Amended Complaint. Plaintiff moves for leave to file a Second Amended Complaint. I recommend that defendants' motion be granted and that plaintiff's motion be denied.

BACKGROUND

The case has its origin in a February 16, 2007 citation issued by Roberts to Murray & Sons, charging Murray & Sons $5,000 for a "serious repeat violation of a prior fall citation." Attchmt 1 to Affid. of Andrew Hallman at p. 1. Murray & Sons contested the citation and a hearing on the matter was conducted by ALJ Mills on January 10, 2008, and June 20, 2008. Anderson was the attorney representing OR-OSHA, Roberts was the OR-OSHA representative at the hearing, and plaintiff, as the president of Murray & Sons, represented her company. In a nine-page decision issued November 4, 2008, ALJ Mills approved the citation.[1]

_____

[1] Although plaintiff does not attach a copy of ALJ Mills's decision to the First Amended Complaint, she makes repeated references to it and the contents of ALJ Mills's decision provides the basis for some of plaintiff's claims. In such circumstances, the district court may consider material outside the pleadings in resolving a motion to dismiss. E.g., Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994) (document is not considered "outside the pleading" for purposes of Rule 12(b) "if

2 - FINDINGS & RECOMMENDATION

1    Generally, plaintiff contends that her rights were violated in
2    connection with the hearing and ALJ Mills's decision.  She alleges
3    that the proceeding was unconstitutional and based on lies.  She
4    further alleges that the proceeding resulted in a "slanderous"
5    Opinion & Order by Mills.
6        The First Amended Complaint does not coherently set forth
7    relevant background facts and claims.  Rather, it is an amalgam of
8    narrative assertions, untethered legal claims, and legal argument.
9    Nonetheless, I attempt to set forth here the major contentions as
10   they are alleged.
11       Plaintiff raises several allegations against all defendants,
12   including the Department.  She contends that defendants required
13   her to participate in unconstitutional proceedings as the only
14   means to challenge the citation.  First Am. Compl. at p. 2.
15   Defendants, all members of the executive branch, are alleged to
16   have formed a "collusive agreement" to deny plaintiff due process
17   and equal protection.  Id. at pp. 2-3.  Defendants' actions
18   violated the separation of powers in both the United States and
19   Oregon Constitutions.  Id. at p. 3.  Defendants made claims in the
20   proceeding that were not supported by fact causing personal injury
21   of "mind and emotion" and irreparable harm to plaintiff's
22   reputation and future earnings.  Id. Defendants allegedly took
23   property that they did not have a right to take.  Id. at p. 4.
24
25   the complaint specifically refers to the document and if its
26   authenticity is not questioned"), overruled on other grounds,
     Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.
27   2002).  ALJ Mills's decision, which describes the citation, is
     appended to the Affidavit of Andrew Hallman.
28

3 - FINDINGS & RECOMMENDATION

Defendants' "collusive agreement" was meant to defeat the purpose of the United States and Oregon Constitutions because "the Oregon Executive branch in this instance cannot be the rule maker, the accuser, and the referee to diminish any person's rights under separation of powers." Id. In violation of the Oregon Constitution, the proceedings did not allow for a jury trial. Id.

As to ALJ Mills individually, plaintiff contends that he failed to reopen the record to hear evidence of perjury. Id. at p. 5. ALJ Mills "avoided" plaintiff's closing argument in his Opinion & Order and attempted to "cover-up" the perjury and false swearing. Id. at p. 5. ALJ Mills was allegedly prejudiced against plaintiff in her representation of her company and used blasphemy toward plaintiff. Id. He libeled plaintiff in the Opinion & Order. Id. at pp. 5-7.

As to Anderson individually, plaintiff alleges that she failed to investigate evidence of Roberts's alleged perjury and false swearing, she ignored the crime of perjury, and made misrepresentations at the hearing. Id. at pp. 8-9. She allegedly made untrue statements. Id. Anderson denied plaintiff due process and equal protection under the United States Constitution. Id.

As to Roberts individually, plaintiff alleges that Roberts libeled and defamed her at the June 20, 2008 hearing. Id. at p. 10. She contends that Roberts committed perjury at the hearing. Id. She alleges that Roberts concealed facts from her that were pertinent to her representation of her company. Id. at p. 12.

Sprinkled throughout her factual allegations, plaintiff makes reference to the following "legal" claims: Articles I-III of the United States Constitution and the Fourteenth Amendment of the

4 - FINDINGS & RECOMMENDATION

United States Constitution; 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§ 241, 242, 1983, 1985; denial of due process and equal protection under the United States Constitution; violation of the Oregon Constitution and "separation of powers" by the defendants' "collusive agreement"; property being taken in "unconstitutional proceedings"; common law claims of misrepresentation of fact, libel, and defamation; and perjury and false swearing. First Am. Compl. at pp. 2, 3, 4, and *passim*.

In the formal recitation of her claims, plaintiff's First Claim for Relief seeks a permanent injunction "to remove all described passages herein by all Defendants be blocked out, deleted from, and erasures of the CDR recording passages view or audio within any public record held by the state of Oregon, and any other passages similar in content to the many mentioned herein." Id. at p. 12. In her Second Claim for Relief, plaintiff seeks a permanent injunction ordering the removal of ALJ Mills's November 4, 2008 Opinion & Order from the internet and any public record. Id. at p. 13. In her Third Claim for Relief, plaintiff seeks relief for her injuries, and prays for damages in the amount of $1,500,000. Id. at p. 14.

STANDARDS

On a motion to dismiss, the court must review the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002). However, the court need not accept conclusory allegations as truthful. Holden v Hagopian, 978 F.2d 1115, 1121

5 - FINDINGS & RECOMMENDATION

1   (9th Cir. 1992).

2        A motion to dismiss under Rule 12(b)(6) will be granted only

3   if plaintiff alleges the "grounds" of his "entitlement to relief"

4   with nothing "more than labels and conclusions and a formulaic

5   recitation of the elements of a cause of action[.]" <u>Bell Atlantic</u>

6   <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation

7   omitted). "Factual allegations must be enough to raise a right to

8   relief above the speculative level, . . . on the assumption that

9   all the allegations in the complaint are true (even if doubtful in

10  fact)[.]" <u>Id.</u> at 1965 (citations and internal quotations omitted).

11                                DISCUSSION

12       Defendants make several arguments in support of their motion:

13  (1) the state law claims against the individual defendants must be

14  dismissed and the State of Oregon substituted as the defendant; (2)

15  the state law claims must be dismissed because plaintiff cannot sue

16  the State of Oregon for damages in federal court under the Eleventh

17  Amendment; (3) ALJ Mills is entitled to absolute immunity for

18  acting in his role as a judge; (4) Anderson is entitled to absolute

19  immunity for acting in her role as a prosecutor; (5) all individual

20  defendants are entitled to absolute immunity for statements made in

21  the course of a judicial proceeding; (6) plaintiff fails to state

22  a claim for defamation under section 1983; (7) plaintiff's

23  remaining allegations of constitutional violations are not based on

24  a cognizable legal theory and fail to include sufficient facts to

25  form a cognizable legal theory; (8) plaintiff's claims are barred

26  by res judicata because Murray & Sons failed to seek judicial

27  review of ALJ Mills's Opinion & Order; (9) plaintiff's claims are

28  barred by the <u>Rooker-Feldman</u> doctrine. I address the arguments in

6 - FINDINGS & RECOMMENDATION

1  turn.

2  I.  Substitution of State of Oregon

3      Under the Oregon Tort Claims Act (OTCA), the sole cause of
4  action for any tort of officers, employees, or agents of a public
5  body acting within the scope of employment or duties, and eligible
6  for representation and indemnification under Oregon Revised Statute
7  §§ (O.R.S.) 30.285 or 30.287, "shall be an action against the
8  public body only." O.R.S. 30.265(1).  Once it is determined that
9  the individual defendants in this case are being sued in tort for
10 actions taken within the scope of their employment or duties, and
11 that they are eligible for representation and indemnification under
12 O.R.S. 30.285 or 30.287, substitution of the State of Oregon as the
13 sole defendant in the state tort claims, is appropriate.

14     Here, the First Amended Complaint does not allege that any of
15 the individual defendants acted outside of their official duties.
16 As described by plaintiff, all of the alleged acts by Mills,
17 Anderson, and Roberts took place within the scope of their
18 employment with the State of Oregon.  Thus, they should be
19 dismissed as defendants from any state tort claims, and the State
20 of Oregon substituted as the sole defendant for those claims.

21 II.  Eleventh Amendment

22     "The Eleventh Amendment bars suits against a state or its
23 agencies, regardless of the relief sought, unless the state
24 unequivocally consents to a waiver of its immunity." Yakama Indian
25 Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th
26 Cir. 1999).  "Although the State of Oregon has consented to be sued
27 in Oregon courts for the torts committed by its employees,
28 officers, or agents while acting within the course and scope of

7 - FINDINGS & RECOMMENDATION

their employment under the OTCA, it has not consented to be sued in federal courts for those torts." Blair v. Toran, No. CV-99-956-ST, 1999 WL 1270802, at *23 (D. Or. Dec. 2, 1999), aff'd, No. 00-35035, 12 Fed. Appx. 604 (9th Cir. June 25, 2001).

Based on the Eleventh Amendment, all of plaintiff's state claims against the individually named defendants are barred because, as above, under the OTCA, the State of Oregon is substituted as the proper defendant in those claims and plaintiff may not sue the State of Oregon in federal court. Additionally, all claims against the Department, whether they be state or federal, and regardless of the nature of the requested relief, are barred.

Any federal claims against the individual defendants are not barred by the Eleventh Amendment because claims for damages under section 1983 are presumed to be brought against state officials in their individual capacities, Shoshone-Bannock Tribes v. Fish & Game Commission, 42 F.3d 1278, 1284 (9th Cir. 1994), and the Eleventh Amendment does not bar such claims. Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991); see also Kentucky v. Graham, 473 U.S. 159, 169 (1985) (noting that the Eleventh Amendment bars suits for damages against state officials sued in their official capacity.[2]

---

[2] It is important to note that the capacity in which a defendant is sued is distinct from the capacity in which the defendant was acting when the alleged deprivation of rights occurred. Eastman v. Anderson, No. CV-08-3043-CL, 2009 WL 1653111, at *5 (D. Or. June 10, 2009). Under section 1983, "a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity." Id. Accordingly, suing the individual defendants in their individual capacities allows the federal section 1983 damages claims to remain, but because the allegations address the

8 - FINDINGS & RECOMMENDATION

1  Additionally, any claims against the individual defendants for

2  prospective, injunctive relief are not barred by the Eleventh

3  Amendment.    Independent Living Center of S. Cal., Inc. v.

4  Maxwell-Jolly, 572 F.3d 644, 660 (9th Cir. 2009) ("Although the

5  Eleventh Amendment expressly prohibits suits against states in both

6  law and equity, a plaintiff may nonetheless maintain a federal

7  action to compel a state official's prospective compliance with the

8  plaintiff's federal rights.").

9  III.  Absolute Immunity

10      A.  ALJ Mills

11      The caption of the First Amended Complaint indicates that

12  Mills is an ALJ.  First Am. Compl. at p. 1.  Plaintiff refers to

13  him as a referee employed by the Workers' Compensation Board.  Id.

14  at p. 3.  She later describes his role in conducting the hearings

15  and issuing the November 4, 2008 Opinion & Order.  Id. at p. 5-6.

16  The Opinion & Order shows that Mills is an ALJ and that he authored

17  that decision.  Attchmt 1 to Hallman Affid. at pp. 1-9.

18      "Absolute immunity is generally accorded to judges and

19  prosecutors functioning in their official capacities."  Olsen v.

20  Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004).

21  "[C]ourts have extended the protections of absolute immunity to

22  qualifying state officials sued under 42 U.S.C. § 1983."  Id. at

23  923.  Absolute immunity may also extend to agency representatives

24  performing functions analogous to those of a prosecutor or a judge.

25  Id.    "Such immunity assures the independent functioning of

26  _____

27  individuals acting in their official conduct, the State of Oregon
    is properly substituted as the defendant in the state tort
28  claims.

9 - FINDINGS & RECOMMENDATION

executive officials acting in a quasi-judicial capacity, thereby ensuring that they can exercise their adjudicative discretion without fear of intimidation or harassment." Id.

To determine whether the protections of absolute immunity are accorded to a state official, the court considers whether the actions taken by the official are "functionally comparable" to that of a judge or a prosecutor. Id. In Butz v. Economou, 438 U.S. 478, 512 (1978), the Supreme Court outlined the following factors to analyze in determining whether the conduct at issue is sufficiently judicial in nature and thus, entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) the agency's insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.

Here, all factors indicate that ALJ Mills is entitled to absolute immunity for all of the conduct alleged in the First Amended Complaint. See Mishler v. Clift, 191 F.3d 998, 1003 (9th Cir. 1999) (explaining that Supreme Court, in Butz, held that executive branch officials, when participating in a federal administrative agency's adjudicative process, are entitled to absolute immunity because they perform functions comparable to those of judges and prosecutors); Yoonessi v. Albany Med. Ctr., 352 F. Supp. 2d 1096, 1099-1100 (C.D. Cal. 2005) ("If the official functions as the equivalent of a judge or a prosecutor, the official will likely be entitled to absolute immunity for any acts

10 - FINDINGS & RECOMMENDATION

committed in that role"; under factors in <u>Butz</u>, officials' alleged acts of using and making false accusations in revoking plaintiff's license to practice medicine, were entitled to absolute immunity).

B. Anderson

As with ALJ Mills, immunity protects Anderson from all of plaintiff's allegations in the First Amended Complaint. The <u>Yoonessi</u> court explained that "[a]n attorney in the Attorney General's Office is immune from lawsuits for any action she commits in discharging her litigation-related duties." <u>Id.</u> at 1103 (citing <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1018 (9th Cir. 2001)). The immunity extends to the assistant attorney general if sued as a member of the Attorney General's Office or if sued individually for conduct occurring during performance of official duties. <u>Bly-Magee</u>, 236 F.3d at 1018.

As recognized in <u>Olsen</u>, the immunity enjoyed by prosecutors for their official actions extends to executive officials and agency representatives performing functions "analogous to those of a prosecutor" in quasi-judicial settings. <u>Olsen</u>, 363 F.3d at 923. Although conduct "wholly unrelated to or outside of [the attorney's] official duties" is not immune from suit, all of Anderson's alleged conduct relates to the performance of her official duties.

C. Section 1983 Claim Based on Libel, Defamation, & "False Swearing"

Defendants assert that they are entitled to absolute immunity under section 1983 to the extent the claim is based on allegations of libel, slander, or false swearing occurring as part of the judicial proceeding. I agree. <u>See</u> <u>Burns v. Reed</u>, 500 U.S. 478,

489-92 (1991) (witnesses absolutely immune from damages liability for making false or defamatory statements in judicial proceedings; immunity extends to any hearing before a tribunal which performs a judicial function); Briscoe v. LaHue, 460 U.S. 325, 341-45 (1983) (Congress, in enacting section 1983, did not abrogate common law absolute immunity afforded to witnesses for alleged false testimony in a judicial proceeding).

As stated above, all of the alleged conduct by Mills and Anderson occurred as part of the judicial proceeding. Plaintiff's allegations against Roberts are a bit less clear. The majority of her allegations are that Roberts misrepresented material facts and committed perjury and false swearing during the June 20, 2008 hearing. E.g., First Am. Compl. at pp. 7, 8, 10-11. However, there are also allegations that Roberts allegedly misrepresented facts, and failed to disclose facts, in his official inspection report. Id. at pp. 11, 12. Plaintiff indicates that these facts were pertinent to her representation of Murray & Sons at the January 10, 2008, and June 20, 2008 hearings. Id. However, plaintiff also states that she "boxed-in" Roberts during questioning, revealing that he had "slanted facts" within his report to hide the fact that he had been to four locations before entering the work site when Oregon law requires that an inspector enter the work site without delay. Id. at p. 11.

The immunity recognized in Burns and Briscoe does not extend to Roberts's alleged conduct outside of the judicial process and assuming, for the purposes of this immunity analysis only, that these allegations about Roberts's misrepresentations in, or omissions from, his report state some sort of section 1983 claim,

12 - FINDINGS & RECOMMENDATION

Roberts is not entitled to immunity for that particular conduct.

IV.  Section 1983 Claims

The basis of plaintiff's federal claims is 42 U.S.C. § 1983. To sustain a section 1983 claim, plaintiff must allege the violation of a federal constitutional or statutory right, by a person acting under color of state law.  See, e.g., Caviness v. Horizon Community Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).

Plaintiff's First Amended Complaint is sprinkled with references to alleged violations of the Oregon Constitution. Violations of a state-created interest that reaches beyond the guarantees of the United States Constitution law do not support a section 1983 claim.  Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001) (plaintiffs' allegation that blood test violated state law failed to state a federal constitutional violation); Picray v. Sealock, 138 F.3d 767, 770 (9th Cir. 1998) (plaintiff's argument that Oregon law did not authorize his arrest did not give rise to a liberty interest beyond that protected by the Fourth Amendment). Plaintiff fails to articulate any cognizable section 1983 claim based on a violation of the Oregon Constitution and thus, any such claims are dismissed.

Plaintiff also appears to assert that the proceedings on the citation before an ALJ deprived her of her constitutional right to a jury trial.  The Seventh Amendment of the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" U.S. Const. amend VII.  The Seventh Amendment "applies only to proceedings in courts of the

13 - FINDINGS & RECOMMENDATION

United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same." Minneapolis & St. Louis R.R. Co. v. Bombolis, 241 U.S. 211, 217 (1916).

Moreover, in cases where "public rights" are litigated (that is, "cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact[,]") the Seventh Amendment "does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible." Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 450 (1977); see also Jackson Water Works, Inc. v. Public Utilities Com'n of State of Cal., 793 F.2d 1090, 1096 (9th Cir. 1986) (noting that "Supreme Court has recognized that the creation of administrative remedies may properly eliminate rights that may have been available in the judicial forum" and further noting that "seventh amendment did not prevent Congress from creating rights and remedies by statute, committing their enforcement to a tribunal other than a court, and thereby eliminating factfinding by a jury.  The seventh amendment is no bar to the enforcement of new rights in a speedy and expert tribunal.").  Plaintiff has no cognizable claim based on a deprivation of a right to a jury trial.

Plaintiff next asserts a violation of "separation of powers" because Mills and Anderson are both employees of the executive branch of state government.  The constitutional principle that one branch of government is prohibited from "encroaching on the central prerogatives of another," is based in the structure of the

14 - FINDINGS & RECOMMENDATION

Constitution which "enumerates and separates the powers of the three branches of Government," and is known as the separation of powers. Miller v. French, 530 U.S. 327, 341 (2000). But, as the Court explained in Atlas Roofing, the delegation of an adjudicative function to the appropriate agency in a case involving "public rights," does not violate the Constitution. Atlas Roofing, 430 U.S. at 450; see also Northern Pipeline Constr. Co. v. Marathon Pipeline Co., 458 U.S. 50, 68-70 (1982) (matters involving public rights can be delegated to administrative agencies for determination).

Although the Supreme Court has suggested that the term "public rights" may no longer be the touchstone for validating Congressional delegations of adjudicatory authority to an agency, see Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 853-54 (1986) ("the public rights doctrine reflects simply a pragmatic understanding that when Congress selects a quasi-judicial method of resolving matters that could be conclusively determined by the Executive and Legislative Branches, the danger of encroaching on the judicial powers is less than when private rights, which are normally within the purview of the judiciary, are relegated as an initial matter to administrative adjudication") (internal quotation omitted), plaintiff's allegations do not state a "separation of powers" claim. First, the agency at issue here is a state agency, not a federal one, and it was the Oregon Legislature, not the United States Congress, that delegated the authority to adjudicate the citation issued by Roberts. Thus, plaintiff's "separation of powers" allegations, to the extent they state a claim at all, do not implicate Article III of the United States Constitution which

15 - FINDINGS & RECOMMENDATION

addresses the _federal_ judiciary. And, as noted above, claims based on the Oregon Constitution are not properly brought under section 1983.

Second, _Atlas Roofing_ itself involved the imposition of a penalty fine by the federal Occupational Safety & Health Administration. There, the plaintiff challenged the administrative imposition of the fine, contending it violated its Seventh Amendment right to a jury trial. The Court, as noted above, rejected that argument. While the Court's opinion centers on the Seventh Amendment, the Court repeatedly notes that the agency's role, through its ALJ, as factfinder and adjudicator, was constitutional. Thus, even if plaintiff here had been cited by a federal agency and had a hearing before a federal ALJ, _Atlas Roofing_ indicates that the administrative adjudication of the citation is constitutionally permissible.

Third, while plaintiff has a due process right to an impartial tribunal, evidence of unconstitutional impartiality is found when the decisionmaker derives "a direct, pecuniary interest from decisions adverse to claimants," or "the decisionmaker was engaged in both adjudicative and executive functions in violation of the principle of separation of powers." _Hammond v. Baldwin_, 866 F.2d 172, 177 (6th Cir. 1989). Here, plaintiff makes no allegation that Mills acted in an investigatory/executive function in addition to adjudicating the dispute, and she makes no allegation that Mills had any pecuniary interest in the outcome. Plaintiff fails to state a cognizable "separation of powers" claim.

Plaintiff also repeatedly refers to "equal protection," but I discern no cognizable equal protection claim in her First Amended

16 - FINDINGS & RECOMMENDATION

Complaint.  Plaintiff's bare, conclusory assertions of an equal
protection violation are insufficient to state a claim.  See
Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008)
(stating that conclusory allegations of law are insufficient to
defeat a motion to dismiss for failure to state a claim).

    Additionally, plaintiff repeatedly refers to defamation.  A
section 1983 claim based on allegations of defamation requires an
allegation of "defamation-plus," meaning "an allegation of injury
to a plaintiff's reputation from defamation accompanied by an
allegation of injury to a recognizable property or liberty
interest."  Crowe v. County of San Diego, 593 F.3d 841, 879 (9th
Cir. 2010); see also Paul v. Davis, 424 U.S. 693, 701-02 (1976)
(damage to reputation alone is not actionable under § 1983 unless
accompanied by injury to "some more tangible interests").  As the
Crowe court recently explained, "[t]here are two ways to state a
cognizable § 1983 claim for defamation-plus: (1) allege that the
injury to reputation was inflicted in connection with a federally
protected right; or (2) allege that the injury to reputation caused
the denial of a federally protected right."  Id. (internal
quotation omitted).

    At this point, the only damages claim that has survived
defendants' dismissal arguments is a claim that Roberts allegedly
made misstatements in, or omitted facts from, his inspection report
and that somehow this interfered with plaintiff's preparation for
the hearing.  If plaintiff can show that these allegations amount
to some sort of federal constitutional claim, and that this
constitutional deprivation then caused an injury to her reputation,
she may be able to state a defamation-plus section 1983 claim.

17 - FINDINGS & RECOMMENDATION

1    Finally, plaintiff also makes several references to
2  unspecified "due process" violations. As with the equal protection
3  assertions, such allegations fail to state a claim.

4  V.    Rooker-Feldman[3]

5    Defendants argue that plaintiff's First Amended Complaint
6  should be dismissed under the Rooker-Feldman doctrine. Generally,
7  under Rooker-Feldman, a federal district court does not have
8  subject matter jurisdiction to hear a direct appeal from the final
9  judgment of a state court. Noel v. Hall, 341 F.3d 1148, 1154 (9th
10 Cir. 2003) (citing District of Columbia Court of Appeals v.
11 Feldman, 460 U.S. 462 (1983), Rooker v. Fidelity Trust Co., 263
12 U.S. 413 (1923)).

13    Under Oregon law, ALJ Mills's Opinion & Order is a final order
14 of the Worker's Compensation Board.  Oregon Revised Statute §
15 (O.R.S.) 654.290(2)(b).  Judicial review of such orders is as
16 provided in Oregon's Administrative Procedures Act (OR-APA).
17 O.R.S. 654.290(1), (2).

18    Under the OR-APA, a person adversely affected by an order is
19 entitled to judicial review of a final order. O.R.S. 183.480(1).
20 Jurisdiction is conferred upon the Oregon Court of Appeals by
21 filing a petition within sixty days after service of the order upon
22 which the petition is based. O.R.S. 183.482.

23    Here, ALJ Mill's Opinion & Order is the final order or
24 judgment in the case because Murray & Sons did not seek judicial

25

26    [3] I decline to address defendants' res judicata argument
27 because, as defendants themselves concede, the record for a full
   analysis of the argument is incomplete. Defts' Mem. at p. 12
28 n.2.

18 - FINDINGS & RECOMMENDATION

review of the decision. Hallman Affid. at ¶ 4.[4]  Thus, ALJ Mills's
decision is properly viewed as a final state court judgment for
purposes of a Rooker-Feldman analysis.  See Lawrence v. Board of
Election Comm'rs of the City of Chicago, 524 F. Supp. 2d 1011, 1017
(N.D. Ill. 2007) ("decisions by quasi-judicial administrative
bodies acting in a judicial capacity may also come under the
Rooker-Feldman rule") (citing Mitchell v. Fishbein, 377 F.3d 157,
166-67 (2d Cir. 2004)).

        "The clearest case for dismissal based on the Rooker-Feldman
doctrine occurs when 'a federal plaintiff asserts as a legal wrong
an allegedly erroneous decision by a state court, and seeks relief
from a state court judgment based on that decision. . . .'"
Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007)
(quoting Noel, 341 F.3d at 1164).  The doctrine bars lower federal
courts "from exercising subject matter jurisdiction over a suit
that is a de facto appeal from a state court judgment." Reusser v.
Wachovia Bank, N.A., 525 F.3d 855, 859 (9th Cir. 2008) (internal
quotation omitted).

        An action brought in federal court constitutes such an appeal
if "claims raised in the federal court action are 'inextricably
intertwined' with [a] state court's decision such that the
adjudication of the federal claims would undercut the state ruling

_____

        [4]  Because an argument based on Rooker-Feldman goes to the
court's subject matter jurisdiction, Noel, 341 F.3d at 1164
("Rooker-Feldman bars subject matter jurisdiction in federal
district court"), I may consider evidence outside the pleadings.
Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996) (a
challenge to the court's subject matter jurisdiction under Rule
12(b)(1) may rely on affidavits or any other evidence properly
before the court).

19 - FINDINGS & RECOMMENDATION

or require the district court to interpret the application of state laws or procedural rules." Id. (internal quotation omitted).  In essence, the Rooker-Feldman doctrine provides that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994).

Remaining in the case at this point are plaintiff's two claims for injunctive relief in which she seeks an order requiring defendants to remove ALJ Mills's Opinion & Order from public view, and an order requiring defendants to remove "all described passages" from any public record held by the State of Oregon, including a "CDR recording."

It is important to distinguish the claims Rooker-Feldman precludes from those it does not. As Noel explained:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

Noel, 341 F.3d at 1164.

Here, Rooker-Feldman applies to plaintiff's claims for injunctive relief because in those claims she seeks to expunge the state court "judgment" itself by seeking removal of ALJ Mills's November 4, 2008 Order & Opinion from public records, or the transcript or tape recording of the hearings upon which his order is based.  The gravaman of the injunctive relief claims is that the

20 - FINDINGS & RECOMMENDATION

November 4, 2008 Opinion & Order was wrongly issued and/or that the contested hearing was somehow conducted improperly. These are not claims of independent injury which a state tribunal failed to remedy. Rather, these claims seek to undo the state decision because of an injury inflicted by the state decision itself. See Lopez v. Kennedy, No. CV-08-706-PK, 2008 WL 5245354, at *4 (D. Or. Dec. 16, 2008) (Rooker-Feldman required dismissal of the plaintiff's claims that a stalking order against the plaintiff was wrongly issued, that the state proceedings were improperly instituted in the first instance, and/or that the state proceedings were conducted improperly).

Also remaining is a possible claim for damages for Roberts's alleged misstatement, or omission, of information from his inspection report. This claim is also precluded by Rooker-Feldman. As noted above, claims that are inextricably intertwined with the state agency's decision are subject to Rooker-Feldman. Reusser, 525 F.3d at 859. The allegations in support of this claim, to the extent they can be discerned from the First Amended Complaint at all, are that Roberts allegedly made misstatements in his inspection report, or omitted information from that report, and that this information was relevant to plaintiff in her hearing preparation. First Am. Compl. at pp. 11-12. The First Amended Complaint further suggests that plaintiff was able to discover the alleged misstatements and omissions after "boxing-in" Roberts during the hearing. Id. at p. 11.

Because the inspection report was the foundation for the hearing, and the alleged misstatements and omissions were the subject of testimony at the hearing, as clearly revealed in the

21 - FINDINGS & RECOMMENDATION

First Amended Complaint, any allegations regarding the alleged misstatements and omissions are inextricably intertwined with ALJ Mills's decision and thus, any alleged injury suffered by plaintiff is a result of ALJ Mills's decision, not as a result of any independently occurring harm.  Even if examined as a defamation-plus type claim, the harm resulting from these allegations, to the extent they support a section 1983 claim at all, is from the penalty imposed by ALJ Mills in his decision and thus, the claim is a de facto attack on the state court decision which is not a claim over which this Court has jurisdiction.  The injunctive relief claims and any remaining claim against Roberts based on his inspection report, should be dismissed pursuant to Rooker-Feldman.

VI.  Amendment

Defendants initially filed a motion to dismiss plaintiff's original Complaint, raising the same arguments raised in the instant motion.  In response to defendants' first motion to dismiss, plaintiff filed her First Amended Complaint, which she was entitled to do as of right and without agreement by defendants or leave of court.

Upon the filing of the First Amended Complaint, the first motion to dismiss was denied as moot.  In response to the First Amended Complaint, defendants filed the instant motion to dismiss.

Plaintiff now seeks leave to file a Second Amended Complaint. I recommend that the motion be denied.

Although leave to amend should be "freely given when justice so requires[,]" Federal Rule of Civil Procedure 15(a), any amendment here would be futile.  Given the discussion above on the Eleventh Amendment, the various immunities, and Rooker-Feldman, the

22 - FINDINGS & RECOMMENDATION

deficiencies in the First Amended Complaint cannot be overcome by amendment.    Additionally, plaintiff was already aware of these arguments when she filed her First Amended Complaint which failed to change any claims or allegations in a way to avoid dismissal. Her proposed Second Amended Complaint adds new defendants which would be dismissed based on the Eleventh Amendment (the Workers' Compensation Board as an entity, the Oregon Department of Justice, and OR-OSHA), as well as the Director of the Department Cory Streisinger who would be subject to dismissal because there are no allegations of personal involvement by Streisinger. E.g., Avalos v. Baca, 596 F.3d 583, 594 (9th Cir. 2010) (section 1983 claim properly dismissed when plaintiff failed to allege personal involvement by individual officers).    Plaintiff also continues to name ALJ Mills and Anderson as defendants, despite being on notice that immunity protects them from the claims as alleged. Additionally, the proposed Second Amended Complaint is replete with inappropriate legal argument.

I recommend that defendants' motion to dismiss be granted and that the First Amended Complaint be dismissed, with prejudice because no amendment can effectively cure the deficiencies.    I further recommend that plaintiff's motion to file a Second Amended Complaint be denied.

VII.    Attorney's Fees

Defendants request attorney's fees under 42 U.S.C. § 1988(b), under which the court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fees. However, a prevailing defendant is entitled to attorney's fees under section 1988(b) only when "the plaintiff's claims are

23 - FINDINGS & RECOMMENDATION

groundless, without foundation, frivolous, or unreasonable." <u>Karam v. City of Burbank</u>, 352 F.3d 1188, 1195 (9th Cir. 2003) (internal quotation omitted).

Defendants argue that the Court should award them fees because plaintiff has continued to present the same claims against the same defendants as in her original Complaint, even after receiving defendants' first motion to dismiss. Particularly, defendants note that plaintiff named ALJ Mills and Anderson in her First Amended Complaint after defendants' first motion to dismiss clearly demonstrated, according to defendants, that they had immunity based on their respective roles in the proceedings. Counsel for defendants apparently advised plaintiff that if she did not dismiss ALJ Mills and Anderson from the First Amended Complaint, defendants would seek attorney's fees.

I decline to recommend an award attorney's fees to defendants. While plaintiff's claims do not survive a motion to dismiss, the recommended ruling herein is based on a number of legal theories, some of which, such as the Eleventh Amendment and <u>Rooker-Feldman</u>, are challenging to understand and apply even for many attorneys. The more straightforward immunity arguments may be more easily understood by a layperson. Nonetheless, given that defendants' motion seeking to dismiss the First Amended Complaint was almost identical to their original motion to dismiss, I do not view plaintiff's refusal to drop ALJ Mills and Anderson after receiving the first motion to dismiss, as having been especially burdensome to defendants.

CONCLUSION

Defendants' motion to dismiss (#35) should be granted and this

24 - FINDINGS & RECOMMENDATION

action should be dismissed with prejudice.  Plaintiff's motion to amend (#45) should be denied.

SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 30, 2010.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due September 16, 2010.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this  12th  day of August , 2010.


/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

25 - FINDINGS & RECOMMENDATION